UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
(Filed Electronically)

CRIMINAL ACTION NO. 3:21CR-21-CHB
UNITED STATES OF AMERICA,                                         PLAINTIFF,

v.

ADDAM TURNER,                                                     DEFENDANT.

**MOTION OF DEFENDANT FOR REVOCATION
OF DETENTION ORDER AND HEARING ON SAME**

Comes the defendant, by counsel, and moves the Court pursuant to 18 U.S.C. §3145(b) to revoke the order of the Magistrate Judge detaining him prior to trial. Defendant requests a second hearing before the District Judge and an order releasing him under such terms and conditions as the Court may impose to reasonably assure his appearance and the safety of the public. Defendant requests a *de novo* hearing on this motion; and, in support of same, submits the following Memorandum of Law.

**Standard of Review**

The scope of this Court's review of the Magistrate Judge's order is *de novo*. See United States v. Reuben, 974 F.2d 580, 585 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 1336 (1993); United States v. Koenig, 912 F.2d 1190, 1192 (9th Cir. 1990); United States v. Tortora, 922 F.2d 880, 883 (1st Cir. 1990); United States v. Clark, 865 F.2d 1433, 1437 (4th Cir. 1989). This Court may hold a *de novo* evidentiary hearing and make an

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

independent determination as to whether any conditions or combination of conditions will reasonably assure defendant's appearance at further court proceedings and protect the public. United States v. Delker, 757 F.2d 1390, 1392-95 (3d Cir. 1985).

### The Alleged Offense Conduct

In the complaint affidavit, it is alleged that Mr. Turner is a member of the United Pharaoh's Guard (UPG), which the affiant—*without citing any evidence whatsoever*—lumps in with groups he identifies as "militia extremists and racially or ethnically motivated violent extremists". (Complaint Affidavit ¶7). On Christmas day, Mr. Turner and other members of the UPG "participated in a caravan protest" in St. Matthews, Kentucky, which St. Matthews police decided to "shadow". (Id., at ¶6). While the affiant references other "protestor caravans" that involved "using vehicles and getting out on foot to illegally block roads, harassing vehicles not involved in the protests, and engaging in other illegal activities", *he cites no evidence that this particular caravan engaged in such conduct*. (Id., at ¶¶6, 8).

After witnessing "several traffic violations" by the caravan and unspecified "dangerous behavior", police executed a "traffic stop" on the caravan's lead vehicles. (Id., at ¶8). While speaking with the drivers of the stopped vehicles, the affiant claims that officers saw Mr. Turner across the road away from the immediate scene in possession of firearms. The affiant claimed "TURNER was observed placing the safety of the AR-pistol into fire position then placing his right index finger inside the trigger guard and onto the trigger". Officers ordered him to remove his hand from this position, and the affiant

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

2

confirms that Mr. Turner complied. Nevertheless, he was arrested and allegedly "used physical force" to resist the arrest. (Id.).

Three days later on December 28, 2020, Mr. Turner allegedly posted a picture on Twitter portraying a St. Matthews Police Department officer with a stylized "bullseye" on his forehead and "skulls and a burning anarchy symbol" in the background. (Id., at ¶¶10-11, R. 10 Indictment). The next day, he posted on Facebook criticism of police in general for not following proper "rules of engagement" at protests and being "dangerous to public safety" as a result. Notably, the post contained no threats of violence of any kind. (Complaint Affidavit ¶12).

Despite the government's almost total focus on the physical confrontation of December 25, 2020, *defendant is not charged herein with that conduct.*[1] Rather, he is charged only with posting on Twitter three days later on December 28, 2020, the single photograph referenced above.

### The Pretrial Services Report

Defendant is 35 years old and has lived in the Louisville area in Charlestown, Indiana, for his entire life. He recently lost his job and was living with friends, however if released, he can reside in Charlestown with his father, who has agreed to be third party custodian and remove all firearms from his home. (Pretrial Services Report, pp. 1-2). He is

---

[1] That alleged conduct is the subject of misdemeanor charges for menacing and resisting arrest in Commonwealth v. Addam Turner, Jefferson District Court No. 20-M-007514, a pending case to which defendant has entered a plea of not guilty and for which he was and remains on bond pending trial on April 6, 2021.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

3

in generally good health with no evidence of current or past mental health issues. (Id., at p. 2). He uses alcohol and marijuana on a weekly basis. (Id.). While he does have prior arrests for misdemeanors, he has no prior convictions of any kind. However, he has received citations for violating conditions of release on a pending state misdemeanor charge by possessing (not using or brandishing) firearms. (Id., at pp. 3-4).

The Pretrial Services Report concludes that Mr. Turner does not pose a risk of nonappearance. However, the report concludes that he poses a risk of danger to the community and recommends his detention for a variety of reasons, some of which are either unsupported by the report *or actually contradicted by it*, for example, the report cites "Prior Arrests and Convictions" but makes clear that he has no prior convictions; claims he is a "Violent Extremist: Domestic - Militia Extremist" but cites not a single instance of violent conduct on his part; and states that he has a "History of Weapons Use" even though the only evidence cited in the report is his *possession* of firearms, not *use*. (Id., at p. 5).

**The Detention Hearing**

At the video detention hearing on February 18, 2021, the United States presented no witnesses, but proffered 1) the alleged facts contained in the complaint; 2) that Mr. Turner was on bond in an unrelated state misdemeanor case at the time of his arrest on December 25, 2020; 3) that he was in possession of firearms while on a bond that required he not

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

possess firearms; 4) the pretrial services report; and 5) a "chart"[2] summarizing the government's allegations of the "radicalization" of Mr. Turner.

Defendant proffered a YouTube video of an interview with members of the United Pharaoh's Group[3] in which they declared the purpose of the group was to provide security for Black Lives Matter protestors. Counsel called three witnesses: Taylor Dishman, Marcus Woods, and Laura Thompson.

Taylor Dishman testified that she is the mother of defendant's 15 year old daughter. She confirmed that although she and defendant live apart and are no longer romantically involved, they remain good friends who co-parent their daughter well together. He has never been violent toward her even when she has violently provoked him and has never seen him act violently toward others. On two occasions, she and defendant had encounters with law enforcement and in each instance defendant had been cooperative and polite with the officers. She is unaware of defendant ever acting violently or threateningly toward police. She is aware that defendant was involved in the Black Lives Matter protests and is a member of the United Pharaoh's Guard but he has not exhibited any escalation of anger as a result. She knows he carries a gun for safety reasons as a tow truck driver. He always handled firearms safely and carefully.

---

[2] Not formally introduced, but shared with defense counsel, filed with the Court prior to the detention hearing, and considered by the Magistrate Judge.

[3] As with the government's exhibit, this was not formally introduced, but shared with government counsel, filed with the Court prior to the detention hearing, and considered by the Magistrate Judge.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

5

Marcus Woods testified that he employed defendant as an AAA tow truck driver through Mosby Towing and had known him for 5 or 6 years, during which they became close friends. As a contract tow truck driver, defendant carries a firearm for protection, has been in several confrontational situations, but never acted violently. In fact, Mosby Towing had a contract with the Shively Police Department; and Woods had the opportunity to observe his interaction with police officers. On these occasions, defendant always acted politely and respectfully and had no issues whatsoever with officers. Woods, who is African-American, attended a couple of protests with defendant and observed no violence from either him or the United Pharaoh's Group.

Laura Thompson testified that she is an engineer who had worked as a contractor for the Department of Homeland Security in the area of threat and explosive detection. As such, she has and retains a security clearance. She met the defendant at a Breonna Taylor protest some six months before and attended several protests with him thereafter. During these protests, defendant never act violently or even pulled his weapon. He provided security with other members of the United Pharaoh's Group, a varied group of Whites, Blacks, Hispanics, and LGBTQ persons which always stayed on the perimeter of the protests protecting participants from violent counter-protestors, some of whom were armed and brandishing weapons. The UPG and other security would escort such violent counter-protestors from the scene, preventing confrontations. After defendant lost his job and, as a result, his house, she allowed defendant to move into her home with her two children, 4 and 6 years old. She had no safety concerns whatsoever with defendant being around her children. Defendant moved

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

6

out eventually only because she had to quarantine due to COVID exposure. They had no romantic or sexual relationship. While he became frustrated after his arrest, he never expressed an intent to harm police officers. He just wanted to continue protesting what he saw as injustice in the community. She did not believe that Mr. Turner had become radicalized as alleged by the government.

In addition, defense counsel proffered that defendant's father, George Richard Turner, was willing to serve as a third party custodian for his son should he be released pending trial. Mr. Turner is aware of the nature of the charges against defendant, has no criminal history, will remove all firearms from the home, and will isolate his computers and internet access from defendant's use. The location of Mr. Turner's residence in the Southern District of Indiana would not be an obstacle to release since the probation office in this district can coordinate defendant's supervision with the Southern District of Indiana. Defendant would be restricted to Mr. Turner's residence except for work or such other activities as approved by the probation office and would be subjected to GPS and location monitoring to insure compliance with all conditions of release.

The Court held that while the United States failed to sustain its burden that defendant was a flight risk, it did sustain its burden that he was a danger to the community, citing the "weight of the evidence" and the "nature of the charges" he faces. The Magistrate Judge held that the photo constituted a threat, that defendant had brandished a firearm, and that he had proven himself unwilling to abide by conditions of bond in the related state case, i.e., he possessed firearms in violation of bond conditions that he not do so. Notably, the Court

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

summarily declared that no condition or combination of conditions would reasonably protect the public without discussing or explaining why the conditions recommended by the defendant fell short of this goal.

### Additional Evidence to Be Formally Introduced at a De Novo Hearing

At a *de novo* hearing defendant will introduce video evidence of defendant's arrest showing that he did not threaten police officers, did not pull or brandish his firearms, and briefly resisted arrest only after being manhandled by arresting officers. In addition, defendant would present testimony from additional witnesses.

### Argument

### The Bail Reform Act, the Standard of Proof, and the Government's Burden

At the heart of the Bail Reform Act are a presumption and a directive: 1) the presumption of 18 U.S.C. §3142(e) that in certain cases and for certain defendants an accused person should be detained in custody pending trial because "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community . . . ." and 2) the directive of 18 U.S.C. §3142 that *in all other cases*, the accused "shall" be released pending trial on personal recognizance or an unsecured bond unless the United States proves by "clear and convincing evidence" that no condition or combination of conditions would reasonably assure the safety of any other person or the community or proves by a "preponderance of the evidence" that no condition

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

8

or combination of conditions would reasonably assure the defendant's appearance as required.

The Magistrate Judge found that the presumption of 18 U.S.C. §3142(e) against release does <u>not</u> apply to defendant's case and that the government failed to prove by a preponderance of the evidence that defendant would not appear as required. Accordingly, 18 U.S.C. § 3142 mandated his pretrial release on personal recognizance or an unsecured bond unless the United States proved by "clear and convincing evidence" that no condition or combination of conditions would reasonably assure the safety of any other person or the community. The clear-and-convincing-evidence standard for finding someone to be a danger to the community or others is a much higher evidentiary standard than the preponderance-of-evidence standard for finding someone to be a flight risk. It requires the government "to place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable'". <u>Colorado v. New Mexico</u>, 467 U.S. 310, 316 (1984).

> Evidence is clear and convincing if it "leave[s] no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question" *Davis v. Combes*, 294 F.3d 931, 936–37 (7th Cir.2002) (internal quotation marks omitted), and proof by a preponderance of the evidence means that the "trier of fact must believe that it is more likely than not that the evidence establishes the proposition in question." *American Grain Trimmers, Inc. v. Office of Workers' Compensation Programs*, 181 F.3d 810, 817 (7th Cir.1999).

<u>In re Andrea H. Meyers</u>, 616 F.3d 626, 631 (7th Cir. 2010). *See also*, <u>United States v. Springer</u>, 715 F.3d 535, 538 (4th Cir. 2013) ("Clear and convincing evidence is evidence 'of such weight that it produces in the mind of the trier of fact a firm belief or conviction without hesitancy, as to the truth of the allegation sought to be established . . . ."); <u>In re</u>

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

Genetically Modified Rice Litigation, 666F.Supp. 1004, 1030 (E.D. Mo. 2009) ("Clear and convincing evidence is evidence that 'instantly tilts the scales in the affirmative when weighed against evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved.'"); In re Eastern Continuous Forms, Inc., 302 B.R. 320, 335 (Bankr. E.D. Pa. 2003) ("The clear and convincing standard requires evidence that is 'so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts of the issue.'").

## Defendant Should Be Released Pending Trial

The Magistrate Judge correctly ruled that the presumption against release does not apply and that defendant was not a flight risk, however she incorrectly held that the government met its burden of proving by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. For the reasons set forth below and to be presented at the *de novo* detention hearing, defendant's detention should be revoked, and he should be released pending trial.

In ruling from the bench, the Magistrate Judge cited three reasons to detain defendant: 1) the weight of the evidence regarding the dangerousness and nature of the charges against him, i.e., the photo constituted a serious threat and he had brandished a weapon; 2) failure to abide by conditions of his state bond; and 3) her finding that the government had proved by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

10

Regarding the allegation of brandishing, the weight of the evidence was equivocal at best. It was proffered by the government that police observed defendant brandish his weapon. Defendant proffered that he did not. No testimony or video evidence was presented on the issue, but defendant will introduce such evidence at the *de novo* hearing.

Regarding the alleged failure to refrain from possessing firearms despite that being a condition of his state bond on misdemeanor charges, that allegation is pending and, as yet, unresolved. Even if true, it does not rise to the level of the finding made by the Magistrate Judge in her order that defendant participated "in criminal activity while on probation, parole, or supervision". (R. 8 Order of Detetnion Pending Trial, p. 2). Defendant was not a prohibited person at the time of the alleged possession, so there was no "criminal activity". Secondly—as outlined below—enforceable conditions can be imposed that would prevent defendant's access to or possession of firearms pending his trial herein.

Regarding the dangerousness and nature of the charged crime, the Magistrate Judge accepted the government's view of the seriousness of the alleged conduct (i.e., tweeting a photo which she interpreted as threatening harm to another) and cited this as the basis for her finding that no condition or combination of conditions could reasonably protect the public from a person charged with this type of offense. In so holding, the Magistrate Judge accepted the government's argument that the mere tweeting of an uncaptioned picture on Twitter portraying a St. Matthews Police Department officer with a stylized "bullseye" on his forehead and "skulls and a burning anarchy symbol" in the background constitutes a serious federal crime and that such conduct is so inherently threatening and dangerous that

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

11

merely being accused of it is sufficient to warrant a defendant detained as a danger to the community pending trial. While the undersigned does not question the reasonableness and good faith of the Magistrate Judge in accepting on face value such an argument from the United States, counsel does question the ingenuousness of the government in making it.[4] However, that is neither here nor there for two important reasons: 1) Congress has

---

[4] The government's argument illustrates the double-standard applied to criminal prosecutions for threatening posts and tweets—one for ordinary citizens and one for the political establishment. What is considered a dangerous felony deserving of punishment when engaged in by persons such as defendant is deemed to be merely the rough and tumble of protected First Amendment discourse when engaged in by the political elite. For example, The Detroit News reported on March 26, 2021 that "Michigan Republican Party Chairman Ron Weiser labeled the state's top Democratic officeholders 'witches' and referenced 'assassination' when pressed Thursday for answers about how to remove two sitting GOP congressmen." (See *https://www.detroitnews.com/story/news/politics/2021/03/26/ michigan-gop-chair-quips-assassination-3-witches-video/7011870002/*). In a tweet on March 6, 2020, Republican Rep. Ken Buck of Colorado's 4th Congressional District threatened former Vice President Joe Biden and former Texas Rep. Beto O'Rourke for wanting to "take everyone's AR-15s." In the video, Buck stands before an AR-15 hanging on the wall and says, "I have a message for Joe Biden and Beto O'Rourke. If you want to take everyone's AR-15 in America, why don't you swing by my office in Washington, D.C., and start with this one?" Then he takes the gun off the wall, holds it with his finger on the trigger, and says, "Come and take it." (See  *twitter.com/RepKenBuck/status/12359446869106606009?s=20)*. CNN reported on January 26, 2021, that "Republican Rep. Marjorie Taylor Greene repeatedly indicated support for executing prominent Democratic politicians in 2018 and 2019 before being elected to Congress. . . . In one post, from January 2019, Greene liked a comment that said 'a bullet to the head would be quicker' to remove House Speaker Nancy Pelosi. . . . In other posts, Greene liked comments about executing FBI agents who, in her eyes, were part of the 'deep state' working against Trump." (See *https://www.cnn.com/2021/01/26/ politics/marjorie-taylor-greene-democrats- violence/index.html*). On September 4, 2020, Greene posted on FaceBook, a picture of herself holding an assault rifle in a clearly aggressive manner with three Muslim members of Congress. She has since removed it. (See *archive.is/jxugM*). On March 25, 2021, South Dakota Senator Mike Rounds tweeted a picture of a statue of a man and a dog. The man is holding a rifle. The caption says "Hey @JoeBiden - come and take it. Careful, she bites too." (See *https://twitter.com/ SenatorRounds/status/ 1375129110683455493?s=20*). Each of these statements and posts are more threatening, egregious, and provocative than the single cryptic, captionless photo ascribed to defendant, but were apparently deemed not threatening enough to warrant prosecution by the United States. The government's outrage is misplaced and rings hollow.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

specifically chosen to exclude such violations of 18 U.S.C. §875(c) from that group of offenses deemed so serious and dangerous as to create a presumption against release pending trial; and 2) the issue then becomes not whether the charge is serious (presumably, all felony criminal charges are serious to a degree), rather it becomes whether there are conditions or a combination of conditions that will reasonably protect the public if a defendant charged with this conduct is released pending trial. It is on this second prong that the Magistrate Judge erred when she held that the government had proved by clear and convincing evidence that there were no such conditions.

In non-presumption cases such as this, pretrial detention is the rare exception and not the rule. United States v. Simon, 760 F.Supp. 495 (D. Virgin Islands 1990). As the Supreme Court has noted: "In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 107 S.Ct. 2095 (1987). It is appropriate "only for a 'limited group' of offenders . . . , i.e., the 'small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons.' " Simon, 760 F.Supp. at 496-97)(quoting United States v. Traitz, 807 F.2d 322, 325(3d Cir. 1986)(quoting S.Rep. No. 98-225, 98th Cong., 2d Sess. 6-7, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3189). "Congress envisioned the pretrial detention of only a fraction of accused individuals awaiting trial." United States v. Orta, 760 F.2d 887, 891 (8th Cir. 1985). Doubts regarding the propriety of release are to be resolved in favor of the defendant. Herzog v. United States, 75 S.Ct. 349, 351 (1955).

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

For charges of violating 18 U.S.C. §875(c), the Bail Reform Act *mandates* defendant's pretrial release on personal recognizance or an unsecured bond unless the Court determines by "clear and convincing evidence" that such release will endanger the safety of any other person or the community. 18 U.S.C. § 3142. A guarantee of safety is not required, the standard is instead "reasonable assurance." United States v. Fortna, 769 F.2d 243 (5th Cir. 1985), *cert. denied*, 479 U.S. 950 (1986); United States v. Orta, 760 F.2d 887 (8th Cir. 1985)(en banc).

Even if the Court determines that a defendant's release will not reasonably assure the safety of the community, the analysis does not end there. In such cases, 18 U.S.C. § 3142(c) *again mandates* release of the defendant subject to the least restrictive conditions that the Court determines will reasonably assure the safety of the community. The Court must consider whether one of the enumerated conditions, any other conditions, or any combination of conditions will satisfy this "reasonable assurance" standard. Orta, 760 F.2d at 890. "The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." Id.

The proof at the detention hearing was that defendant has no prior convictions for any crime, let alone a crime of violence. He has never engaged in violent or aggressive conduct, as verified by the witnesses. While he may have expressed anger at how BLM protestors were treated by police, the witnesses all agreed that he has never exhibited anger or aggressiveness in his encounters with police or others. He is a good father. He was gainfully employed and capable of seeking employment. While he had no permanent

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

14

residence due to loss of that employment, his father has agreed to allow him to live with him and to be a third party custodian. Clearly, there are conditions that can be imposed on such a man that will reasonably protect the public while he awaits trial on a contested charge he denies.

The statute itself provides fourteen non-exclusive illustrations of conditions which the Magistrate Judge should have considered and could have imposed in order to comply with the least restrictive condition requirement of the statute. If the Court's concern was the protection of the public—as it apparently was in this case—numerous conditions have been upheld that address this concern and still allow a defendant to be released pending trial: third party custodianship (18 U.S.C. § 3142(c)(B)(I)); restrictions on personal associations, place of abode, or travel (§ 3142(c)(B)(iv); reporting on a regular basis to a designated agency (§ 3142(c)(B)(vi); curfew requirements (§ 3142(c)(B)(vii); and other conditions.

House arrest at his father's home is a permissible condition of release. United States v. Traitz, 807 F.2d 322 (3d Cir. 1986). *cert. denied*, 493 U.S. 821(1989). Ordering him to remain in the third party's custody with the further condition that the he not leave his place of residence unless accompanied by that custodian is also permissible, as well as electronic monitoring. United States v. Edwards, 960 F.2d 278 (2d Cir. 1992). Communication restrictions—no mail, phone, internet—and motor vehicle use restrictions have also been upheld. United States v. Miller, 625 F.Supp. 513 (D. Kan. 1985).

Clearly, there were and are conditions or combination of conditions recognized *and encouraged* by the Bail Reform Act that would and will reasonably assure the safety of the

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

15

public should defendant be released, including, but not limited to:

**Third party custodianship**, 18 U.S.C. §3142(c)(1)(B)(I)—An acceptable third party custodian, defendant's father, has been identified and can be vetted by the Probation Officer. He will enforce any curfew or other restrictions and report any violations. When he is at work, location and GPS monitoring will insure compliance with any home detention condition. Password protection will isolate defendant from any computer or internet access. No firearms will be in the house or otherwise available to defendant.

**Maintenance of employment**, 18 U.S.C. §3142(c)(1)(B)(ii)—Defendant is capable of working and has a history of steady employment. He could be required to seek and/or obtain employment.

**Restrictions on travel, abode, and associations, as well as curfews**, 18 U.S.C. §§3142(c)(1)(B)(iv) and (vii)—Defendant can be restricted to the home of his third party custodian; his place of work, if any; and any travel approved by his probation officer. Defendant is willing to wear any electronic monitoring necessary to insure his compliance with all travel, curfew, and location restrictions.

**Reporting to a probation officer**, 18 U.S.C. §3142(c)(1)(B)(vi)— Defendant will be living close by and can be easily monitored by and report to the probation officer here in Louisville or in the Southern District of Indiana.

**Prohibition of firearms or dangerous weapons**, 18 U.S.C. §3142(c)(1)(B)(viii)—Defendant will have no access to firearms or dangerous weapons in the home of his third party custodian and will be prohibited from possessing them in any event. Now that he is indicted for a felony, simple possession of any firearm will constitute a new felony offense for which he would receive a significant term of imprisonment even if acquitted of the current charge; and, if convicted of the current charge, the Federal Sentencing Guidelines would require such a sentence to run consecutively with any sentence imposed herein. While on bond, he will be confined to his father's home where there will be no firearms and subject to search by the probation officer to ensure that is the case.

**Abstinence from alcohol or drugs**, 18 U.S.C. §3142(c)(1)(B)(ix)— Given defendant's admitted alcohol and marijuana use, random drug and alcohol testing can and should be ordered as conditions of release.

Office of the
**Federal Defender**
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

16

**Treatment for drug dependency**, 18 U.S.C. §3142(c)(1)(B)(x)— Should it be deemed by the probation officer to be needed, defendant will comply with any counseling and treatment ordered by the Court or its probation officer.

**<u>Any</u> other condition reasonably necessary to assure his appearance and the safety of the community**, 18 U.S.C. §3142(c)(1)(B)(xiv)—For example, in addition to the above, defendant can be ordered to refrain from any direct or indirect contact with the alleged victims or any witnesses or from accessing the internet, mail, social media, or any form of communication for any purpose other than communication his counsel. He can be ordered to abide by *any other conditions desired by the Court*, and his compliance can be reasonably assured by third party custodianship, home detention, GPS monitoring, and supervision by United States Probation.

Defendant is willing to abide by the above restrictions or any others that the Court may feel are warranted.

### Conclusion

Without question, there is a condition or a combination of conditions that will reasonably assure the safety of the community should defendant be released pending trial on this charge of which he is presumed innocent.

At the very least, the Bail Reform Act mandates defendant's pretrial release subject to the least restrictive conditions that the Court determines will reasonably assure the safety of the community. The conditions and combination of conditions outlined herein satisfy this "reasonable assurance" standard and his release subject thereto is necessary to implement the will of Congress that very few defendants be subject to pretrial detention." <u>Orta</u>, 760 F.2d at 890.

**WHEREFORE**, defendant respectfully moves the Court to vacate the Magistrate Judge's order of detention.

Office of the
**Federal Defender**
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

/s/ Scott T. Wendelsdorf
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, Kentucky 40202
(502) 584-0525

Counsel for Defendant.

### CERTIFICATE

I hereby certify that on March 30, 2021, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Joshua Judd, Assistant United States Attorney.

/s/ Scott T. Wendelsdorf

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808