# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE
#### (Filed Electronically)

**CRIMINAL ACTION NO. 3:21CR-21-CHB**

**UNITED STATES OF AMERICA,**                                        **PLAINTIFF,**

**vs.**

**ADDAM TURNER,**                                                    **DEFENDANT.**


## DEFENDANT'S SENTENCING MEMORANDUM

**May it Please the Court:**

Defendant entered a plea of guilty to making an interstate threat in violation of 18 U.S.C. §875(c). The plea was pursuant to a Rule 11(c)(1)(C) plea agreement in which both the United States and the defendant agreed as follows:

> **Paragraph 12.** That under the particular facts of this case, it is more appropriate to apply the 3 level increase for official victim under U.S.S.G. §3A1.2(a) rather than the 6 level increase under U.S.S.G. §3A1.2(b), making the total offense level 13 and the advisory sentencing range 12 to 16 months, C zone.
> **Paragraph 11.** That a sentence of 6 months imprisonment followed by 6 months home incarceration and a term of supervised release is the appropriate disposition of the case.

The presentence report (PSR) applies the 6 level increase of U.S.S.G. §3A1.2(b)—which the parties agree should *not* be applied in this case—and deems defendant

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

to have a total offense level of 15 and a criminal history category of I for an advisory sentencing range of 18 to 24 months, D zone.

The Court should accept the plea agreement of the parties and sentence defendant to a total term of 6 months imprisonment and 6 months home incarceration. This sentence, followed by a term of supervised release with all of the stringent requirements, controls, monitoring, and sanctions supervised release entails, is sufficient but not greater than necessary to 1) provide defendant with needed correctional treatment in the most effective manner; 2) protect the public from further crimes of the defendant; 3) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; and 4) afford adequate deterrence to criminal conduct by others. 18 U.S.C. §3553(a)(2).

### Facts

On Christmas day in 2020, Mr. Turner participated in a Black Lives Matter caravan protest in St. Matthews, Kentucky, which St. Matthews police decided to "shadow". (DN 1 Complaint Affidavit, at ¶6). While the government claims that other "protestor caravans" had involved "using vehicles and getting out on foot to illegally block roads, harassing vehicles not involved in the protests, and engaging in other illegal activities", there is no evidence that this particular caravan engaged in such conduct. (Id., at ¶¶6, 8).

After witnessing "several traffic violations" by the caravan and unspecified "dangerous behavior", police executed a "traffic stop" on the caravan's lead vehicles. (Id., at ¶8). While speaking with the drivers of the stopped vehicles, officers saw Mr. Turner across the road away from the immediate scene in possession of firearms. The government would have argued

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

at trial that defendant was observed "placing the safety of the AR-pistol into fire position then placing his right index finger inside the trigger guard and onto the trigger". Defendant would have denied doing any such thing. Indeed, relevant excerpts from a video file of the encounter provided to defendant by the United States in discovery (USA-001015) would have been admitted into evidence at a trial[1]. It shows the initial confrontation between defendant and the St. Matthews Police Department. The video does not show defendant threatening police with his firearm—a vehicle blocks the view of defendant for a time—but police officers are shown drawing their weapons, threatening defendant, and yelling at him. When the blocking vehicle clears the scene, defendant is clearly shown complying with police officers' commands with his hands plainly seen being held well away from the firearm with no threatening stance or aggressive conduct of any kind. An officer and the defendant are shown in conversation while other officers on the scene are shown walking about seemingly unconcerned. The only people shown being threatened by firearms are the unarmed protestors at whom armed police were pointing their weapons in an effort to keep them back.[2] The video shows that while defendant is talking with police with his hands in a clearly non-threatening configuration, he is tackled, tased, manhandled to the ground, and arrested.

---

[1] Said video has been filed in the record herein. (DN 22 Reply to Response, Exhibit A).

[2] The video shows police talking to defendant, but it is not at all clear what is being said or by whom. A person can be heard repeatedly yelling "Put your gun down!", but it is clearly a demand being made by the person making the video, presumably one of the protestors, and directed to the armed police holding the crowd at bay by gunpoint.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

Three days later on December 28, 2020, Mr. Turner posted a picture on Twitter portraying one of the officers with a stylized "bullseye" on his forehead and "skulls and a burning anarchy symbol" in the background. (DN 10 Indictment). The government would have argued at trial that the photo constituted a threat that the officer would be harmed. The defendant would have argued at trial that the post was meant merely to convey that this particular officer was accused of misconduct. This view would arguably have been bolstered by introduction of defendant's post the next day on Facebook which contained no threats of any kind but did criticize the police at length for not following proper "rules of engagement" at protests and being "dangerous to public safety" as a result. (DN 1 Complaint Affidavit ¶12).

## The Need for and Benefit of Compromise

This case was not an easy win for either side. It may very well have resulted in either defendant's conviction or acquittal. Would the jury view the picture as an explicit threat under the statute or a permissible political statement of criticism?[3] The United States recognized that if defendant successfully convinced the Court or the jury that it was the latter, the case would result in an acquittal. Likewise, defendant understood that if the Court and the jury agreed that the photo was a real threat under the statute, he faced certain conviction and a substantial sentence. So, the parties did what litigants routinely do in both criminal and civil cases, i.e., reached a mutually agreeable compromise resolution of the case that guaranteed the

---

[3] As detailed in defendant's motion to revoke detention (DN 19 Motion to Revoke Detention, p. 12, Footnote 4) a significant argument can be made that defendant's equivocal picture constituted conduct much less threatening than specific threats made by political officials and deemed lawful–or at least ignored–by the United States Department of Justice.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

government a conviction and the defendant a sentence less than would otherwise result from conviction at trial. The agreement avoids the vagaries of trial, brings finality to the case, and avoids any appeal or collateral attack. As the Supreme Court recognized in <u>Missouri v. Frye</u>, 566 U.S. 134 (2012):

> "To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it *is* the criminal justice system." (Citation omitted).
> To note the prevalence of plea bargaining is not to criticize it. The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties.

<u>Id</u>., at 144. Justice Scalia was more to the point in his typically acerbic fashion in his dissent in <u>Lafler v. Cooper</u>, 566 U.S. 156 (2012).

> [W]e accept plea bargaining because many believe that without it our long and expensive process of criminal trial could not sustain the burden imposed on it, and our system would grind to a halt.

<u>Id</u>., at 186. Relieving the burden that trying every case would impose on the criminal justice system is not the only reason to accept a plea agreement. Parties seek settlement of criminal cases for the same reasons litigants seek settlement of civil cases, i.e., mutually agreeable compromise resolution of cases that would otherwise result in one party losing and the other winning if the case were tried. Such is the case here.

Granted, the PSR disagrees with the stipulated offense level calculation of the parties and the resulting advisory Guideline sentencing range. The difference is the application of the official victim enhancement under U.S.S.G. §3A1.2. The parties are certainly cognizant of

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

§3A1.2(b), but agreed—as FRCrP 11(c)(1)(C) permits them to do—that it and the resulting advisory sentence should not be applied in this particular case with these particular facts. This may result in a sentence below that recommended by the PSR; but, just as civil cases are often settled for less than the provable damages suffered by a plaintiff, criminal cases are often settled for less than the otherwise applicable *advisory* guideline sentence. The actual amount of a civil plaintiff's provable damages is not an inflexible litmus test for the reasonableness a disputed claim's settlement. Likewise, the advisory sentencing guidelines should not be an inflexible litmus test for the reasonableness of a settlement of a disputed criminal case.

## The Appropriate Disposition of the Case

In addition to settling a contested case that could very well have resulted in either conviction or acquittal, the agreed upon sentence of 6 months imprisonment and 6 months home incarceration followed by a term of supervised release complies with the sentencing requirements of 18 U.S.C. §3553(a)(2), in that it is sufficient but not greater than necessary to 1) provide defendant with needed correctional treatment in the most effective manner; 2) protect the public from further crimes of the defendant; 3) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; and 4) afford adequate deterrence to criminal conduct by others. After his release from custody in this case, the stringent requirements, controls, monitoring, and sanctions of supervised release will protect the public from any further crimes of defendant. Should he violate any of the terms of his supervised release or evade the controls and supervision of his probation officer, he will be returned to prison to serve additional time.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

## Conclusion

The parties urge the Court to accept their Rule 11(c)(1)(C) plea agreement. It represents the considered judgment of the attorneys for both the United States and the defendant that the recommended sentence is a reasonable resolution of a disputed case that either side could easily have won or lost and is sufficient but not greater than necessary to comply with 18 U.S.C. §3553(a)(2).

/s/ Scott T. Wendelsdorf
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, Kentucky 40202
(502) 584-0525

Counsel for Defendant.

## <u>CERTIFICATE</u>

I hereby certify that on July 21, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following: Joshua Judd, Assistant United States Attorney.

/s/ Scott T. Wendelsdorf

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808